**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ROBERT JONES,

                        Plaintiff,

       v.                                            No. 11-CV-774
                                                                          (GLS/CFH)

BRIAN FISCHER, Commissioner, DOCCS;
KENNETH S. PERLMAN, Deputy Commissioner
for Programs; JOSEPH SMITH, Superintendent,
Shawangunk Correctional Facility; John Doe #2–6,
Employees of DOCCS; Jane Doe #1–5, Employees
of DOCCS; MR. PHILLIPS, Superintendent, Wallkill
Correctional Facility; OSBOURNE McKAY, Deputy
Commissioner of Industries/Accreditation Corcraft
DSS/DOCCS Eyeglass Project Optical Lens
Laboratory; State of New York Department of
Corrections and Community Supervision,

                      Defendants.[1]

---

**APPEARANCES:**                                    **OF COUNSEL:**

ROBERT JONES
Plaintiff Pro Se
3491201713
George Matchan Detention Center[2]
1515 Hazen Street
East Elmhurst, NY 11370

---

    [1] By Decision and Order, "Mr. Phillips, Superintendent, Wallkill Correctional Facility" is a defendant in place of "John Doe #1," "Osbourne McKay, Deputy Commissioner of Industries/Accreditation Corcraft DSS/DOCCS Eyeglass Project Optical Lens Laboratory, State of New York Department of Corrections and Community Supervision," is a defendant in place of "Corcraft DSS/DOCCS Eyeglass Project Optical Lens Laboratories," and defendant Dutchess County Executive William R. Steinhaus was dismissed without prejudice as a defendant in this action. Dkt. No. 8 at 2–3.

    [2] The record reflects that the "George Matchan Detention Center" is actually spelled "George Motchan Detention Center." Dkt. No. 53-5 at 1. The latter spelling is used for this Report-Recommendation.

| HON. ERIC T. SCHNEIDERMAN | DAVID L. COCHRAN, ESQ. |
| --- | --- |
| Attorney General for the | Assistant Attorney General |
| State of New York | |
| Attorney for Defendant | |
| The Capitol | |
| Albany, New York 12224-0341 | |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[3]

Plaintiff pro se Robert Jones ("Jones"), an inmate formerly in the custody of the New York State Department of Correctional and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, five DOCCS employees, five Jane Does, four John Does, and DOCCS, violated his constitutional rights under the First, Eighth, and Fourteenth Amendments. Am. Compl. (Dkt. No. 7). Jones also asserts claims pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 et seq. Id. Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Dkt. No. 53. Jones has not opposed the motion. For the following reasons, it is recommended that defendants' motion be granted in part and denied in part.

## I. Failure to Respond

Jones did not oppose defendants' motion although he was granted an extension of time to do so. See Text Order dated 1/24/2013. "Summary judgment should not be entered by

---

[3] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

2

default against a pro se plaintiff who has not been given any notice that failure to respond will be deemed a default." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Defendants provided notice in their motion papers as required by the Second Circuit and as normally done by the office of defendants' counsel. Id.; Dkt. No. 53-1. Further, the Court provided such notice by mail. Dkt. No. 55-1. Despite both the notice and the extension of time, Jones failed to respond.

"The fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." Champion, 76 F.3d at 486. Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law. Id.; FED. R. CIV. P. 56(c). "A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . ." Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted). The facts set forth in defendants' Rule 7.1 Statement of Material Facts (Dkt. No. 53-6) [hereinafter "Defs.' Statement"] are accepted as true as to those facts that are not disputed in Jones's verified amended complaint.[4] N.D.N.Y.L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not specifically controvert.") (emphasis omitted).

---

[4] Generally, "[a] party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference." N.D.N.Y.L.R. 7.1(a)(4). Jones referenced three exhibits in his amended complaint that clearly refer to the exhibits attached to his original complaint. This Court considers his amended complaint as including those original exhibits.

3

## II. Background

On February 24, 2011, Jones was transferred from Marcy Correctional Facility ("Marcy") to Wallkill Correctional Facility ("Wallkill") for housing and vocational training. Defs.' Statement ¶ 6; Am. Compl. ¶ 26. Jones alleged that Wallkill presented architectural barriers to his alleged disabilities. Defs.' Statement ¶ 7; Am. Compl. ¶¶ 30–31. Jones was then transferred to the Shawangunk Correctional Facility ("Shawangunk"). Defs.' Statement ¶ 7; Am. Compl. ¶ 32. Upon his arrival at Shawangunk, Jones alleged that he was "quarantined" in the infirmary, which lacked adequate heating and clean drinking water from February 24, 2011 through April 2011. Defs.' Statement ¶ 8; Am. Compl. ¶¶ 34–35.

As of December 12, 2012, DOCCS's records show that Jones had filed five grievances, two of which were filed at Marcy in 2010. Defs.' Statement ¶ 16; Hale Aff. (Dkt. No. 53-3) ¶ 4; Dkt. No. 53-4. Jones is currently at the George Motchan Detention Center, which is a New York City facility. Defs.' Statement ¶ 5; Dkt. No. 53-5.

For purposes of § 1983, Jones alleged that defendants acted in their individual and official capacities. Defs.' Statement ¶ 9; Am. Compl. ¶ 21. For the ADA and Rehabilitation Act claims, Jones alleged that defendant Phillips discriminated against him generally and defendant McKay discriminated against him by denying him access to the Optics program for vocational training. Defs.' Statement ¶ 10; Am. Compl. ¶¶ 47, 49.

For the conditions of confinement[5] and wrongful segregation claims, Jones listed all defendants in the point-headings but did not make specific allegations as to any defendant.

---

[5] Jones labeled this claim as a "failure to protect." Am. Compl. ¶¶ 52–56. However, his allegations surrounding inadequate heating and the unavailability of clean drinking water are more appropriately framed as a "conditions of confinement" claim.

4

Defs.' Statement ¶¶ 11–12; Am. Compl. ¶¶ 52–60.  For the medical indifference claim, Jones alleged that

> [all defendants] owed a duty of care to [him] and failed in that duty, and were deliberately indifferent to [his] disability and serious medical needs by failing to provide necessary reasonable accommodations for the handicapped at Wallkill [C]orrectional [F]acility, thereby depriving [him] access to the federally funded Optics program for which he was otherwise eligible.

Defs.' Statement ¶ 13; Am. Compl. ¶ 62.

For his RLUIPA claim, Jones asserted "the defendants would not allow him to attend religious services for over thirty days, nor did they provide a Muslim chaplain to see him or conduct services."  Defs.' Statement ¶ 14; Am. Compl. ¶ 67.  And finally, for his First Amendment retaliation claim, Jones did not make specific allegations against any particular defendant.  Defs.' Statement ¶ 15; Am. Compl. ¶¶ 70–71.

Phillips has not been served in this action.  Defs.' Statement ¶ 10; Dkt. No. 11 (returning summons because Wallkill did not have a superintendent named Phillips).

### III. Service of Summon and Complaint

Defendants, though modestly, argue that since Phillips has not been served with process, he should be dismissed from this action.  Defs.' Mem. of Law (Dkt. No. 7) at 4.  Where a defendant has not been served with process within 120 days after the complaint is filed, the Court must, on motion or sua sponte after notifying the plaintiff, dismiss the complaint without prejudice as to that defendant or "order that service be made within a specified time." FED. R. CIV. P. 4(m).  If, however, the plaintiff demonstrates good cause for service failures, the Court must also extend the time to serve.  Id.  Additionally, the Second

Circuit has held that "district courts have discretion to grant extensions even in the absence of good cause." Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007).

In this case, more than one year had passed since Jones filed his amended complaint on October 25, 2011, naming Phillips a defendant. Am. Compl. Even though Jones had updated the Court with his new addresses (Dkt. Nos. 12, 24, 25) and requested and received an extension to respond to this instant motion, Jones has failed to provide the Court with any reasons, let alone good cause, for the service failure with Phillips. Jones failed to both seek assistance with the service failure and oppose defendants' motion. Thus, Phillips should be dismissed from this action.

Accordingly, defendants' motion on this ground should be granted.

### IV. Discussion

Jones contends that his rights were violated under the First, Eighth, and Fourteenth Amendments, the ADA, Rehabilitation Act, and RLUIPA. Defendants move for summary judgment on the issues of mootness, exhaustion, Eleventh Amendment immunity, personal involvement, and Jones's failure to state an ADA claim.

### A. Mootness

Article III, Section 2, Clause 1 of the United States Constitution limits the jurisdiction of federal courts to resolve "cases" or "controversies." U.S. CONST. art. III, § 2, cl.1. In order "[t]o sustain . . . jurisdiction in the present case, it is not enough that a dispute [be] very much alive when suit was filed, or when review was obtained . . . ." Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). Thus, "throughout the litigation, the plaintiff 'must

6

have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer v. Kemna, 523 U.S. 1, 7 (1998) (quoting Lewis, 494 U.S. at 477 (1990)).

In this case, although not expressly stated, the nature of Jones's claims makes out a request for injunctive relief. See, e.g., Am. Compl. ¶ 30 (enumerating Wallkill's architectural barriers for inmates with disabilities, including inter alia the lack of handrails in the showers, wheelchair ramps, and low level sinks), ¶¶ 34–35 (alleging Shawangunk's failure to provide adequate heating and clean water when quarantined at Shawangunk). Jones expressly seeks declaratory relief. Am. Compl. at 12. Jones was previously incarcerated at Marcy, Wallkill, and Shawangunk. Jones's transfer from these correctional facilities to George Motchan moots any claims for injunctive or declaratory relief. Therefore, there is no live controversy and the Court no longer has jurisdiction over these potential claims for relief. See, e.g., Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (holding that all injunctive and declaratory claims were mooted by the plaintiff's transfer from a prison facility); Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility").

Accordingly, defendants' motion on this ground should be granted.

### B. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings,

7

depositions, and affidavits which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial.  The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Conclusory allegations or unsubstantiated speculation" may not be relied upon.  Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (citations omitted).  The non-movant "must offer some hard evidence showing that its version of the events is not wholly fanciful."  Id. (citing D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)) (internal quotation marks omitted).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223–24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . .

8

> or arguments that the submissions themselves do not "suggest,"
> . . . that we should not "excuse frivolous or vexatious filings by
> pro se litigants," . . . and that pro se status "does not exempt a
> party from compliance with relevant rules of procedural and
> substantive law . . . ."

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247–48.

### C. Exhaustion

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suits challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 83 (2006). This exhaustion requirement applies to all prison condition claims. Porter, 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

Exhaustion for an inmate in DOCCS custody is generally achieved through the Inmate Grievance Program ("IGP"). See N.Y. COMP. CODES R. & REGS. tit. 7, § 701.1, et seq.

9

(2012).

> The IGP has a regular three-tiered process for adjudicating inmate complaints: (1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC")[;] (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility[;] and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Officer Review Committee ("CORC").

Espinal v. Goord, 588 F.3d 119, 125 (2d Cir. 2009) (citing in footnote, the current N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5 (2012)). Exhaustion must precede filing a lawsuit. Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) ("Subsequent exhaustion after suit is filed therefore is insufficient."), abrogated in part on other grounds by Porter, 534 U.S. 516.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. Cnty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). The failure to exhaust may be excused in limited circumstances.

> In determining whether such an exception is applicable, a district court must apply a three-part test: First, the court must determine whether administrative remedies in fact were available to the prisoner. Second, if such remedies were available, the court must determine whether the defendants' own actions inhibited the inmate's exhaustion of administrative remedies, thereby requiring that one or more of them be equitably estopped from raising the failure to exhaust as a defense. Finally, if administrative remedies were available and the defendants are not estopped, the court must determine whether any special circumstances justify the prisoner's failure to comply with administrative procedural requirements.

Gayle v. Benware, 716 F. Supp. 2d 293, 298 (S.D.N.Y. 2010) (internal citations omitted); see generally Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004) (articulating above test as the appropriate method for excusing failure to exhaust given the present state of all

10

Second Circuit opinions). "Unavailability of administrative remedies . . . is an objective [test]: that is, would a similarly situated individual of ordinary firmness have deemed them unavailable." Kasiem v. Switz, 756 F. Supp. 2d 570, 576–77 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). Estoppel occurs when "an inmate reasonably understands that pursuing a grievance through the administrative process will be futile or impossible . . . [as evidenced by] prison officials' threats, beatings, . . . denials of grievance forms, or by other misconduct deterring [the inmate] from fulfilling the requisite procedure." Id. at 577 (internal quotation marks and citations omitted). If an inmate claims estoppel and continues to file complaints and grievances, the exception is inapplicable. Id. Special circumstances exist when an inmate's failure to comply can be justified. Id. (citations omitted). Justification is found "by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004) (citations omitted).

In this case, a question of fact remains with respect to whether a special circumstance justifies Jones's failure to comply with exhaustion requirements. DOCCS's records show that no grievances were filed or appealed in 2011 and none of Jones's documented grievances involved inadequate heating and water, access to programming, or participation in religious activities. On the other hand, Jones submitted a grievance dated April 12, 2011 addressed to Wallkill while he was housed at Marcy, complaining of the confinement conditions and lack of accommodations at Wallkill and Shawangunk.[6] Dkt. No. 1-1 at 3.

---

[6] Jones also alleged that he filed two more grievances. Jones submitted a letter dated March 13, 2011 requesting Wallkill to send his legal papers to him at Shawangunk. Dkt. No. 1-1 at 1. Jones confirmed that he received his legal work and referenced an attached exhibit containing a March 13, 2011 grievance. Id. However, the exhibit is a grievance dated April 12, 2011, not March 13. Id. at 2. The second grievance was filed

11

Non-party and Wallkill employee P. Henn responded that pursuant to Directive #4040, Jones must file the grievance at Marcy, where Jones was housed, even though the grievance was filed against Wallkill's employees. Id. at 9. Per these instructions, Jones submitted a grievance letter to Marcy, which was unanswered.[7] Am. Compl. ¶¶ 10, 17–18, 44. Jones explained that the silence to his complaints compelled him to file this lawsuit. Id. ¶ 20. Exhaustion is an affirmative defense that defendants bear the burden of raising and proving. Jones v. Bock, 549 U.S. 199, 211–17 (2007). Defendants' reliance on DOCCS's records to contest Jones's allegations is insufficient to show an absence of a factual dispute because an unanswered grievance, presumably, would not be documented in DOCCS's records. Thus, based on the evidence before the Court, there remains a question of fact as to whether Jones should be excused from the exhaustion requirement.[8]

Accordingly, defendants' motion on this ground should be denied.

### D. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any

---

on March 28, 2011, but Shawangunk did not respond, Am. Compl. ¶ 16, nor did Jones present it to the Court.

[7] Jones alleged that he wrote a letter to non-party Bellnier, Marcy's superintendent, which was left unanswered. Am. Compl. ¶ 19. However, this letter was not submitted to the Court.

[8] For the first part of the test, Jones does not contend that the grievance procedure was unavailable to him. As for the second part, Jones's unanswered grievance addressed to Marcy did not concern Marcy's employees, who are also not parties to this action. Therefore, those two steps do not present an issue of fact for the exhaustion analysis.

12

Foreign State." U.S. CONST. amend. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340–41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official. Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though it was asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Jones seeks monetary damages against defendants in their official capacities for acts occurring within the scope of their duties with DOCCS. Thus, the Eleventh Amendment bar applies and serves to prohibit Jones's claims for monetary damages against defendants in their official capacities.

Accordingly, defendants' motion on this ground should be granted.

### E. Personal Involvement

Defendants contend that, Jones failed to establish their personal involvement in the

13

alleged constitutional violations. Defs.' Mem. of Law at 12–13. "'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).[9]

---

[9] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v. Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Jones essentially alleged that all defendants were directly involved in the alleged constitutional violations that occurred at Wallkill and Shawangunk. However, only two defendants allegedly worked at either facility—Superintendent Phillips at Wallkill, who was not served with process in this action, and Superintendent Smith at Shawangunk. Further, Jones's conclusory allegations with respect to defendants' direct involvement are unsubstantiated by any facts or evidence. Jeffreys, 426 F.3d at 554. Moreover, liberally construing Jones's amended complaint, aside for the unnamed defendants, the gravamen of Jones's complaints against the individual defendants is that they were in a position of power, thus always involved with anything occurring in conjunction with Jones's incarceration. Nevertheless, attempts to establish personal involvement based upon the supervisory role these defendants occupied is inappropriate. Wright, 21 F.3d at 501 (holding that a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement).

To the extent that Jones seeks to establish Phillips's knowledge of his complaints through Henn's response to his grievance, such an attempt must also fail. Merely writing letters and grievances to a defendant is insufficient to establish notice and personal involvement. Smart v. Goord, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) ("Commissioner . . . cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff] . . . ."). Similarly, receipt of a letter or grievance, without personally investigating or acting on the letter or grievance, is insufficient to establish personal involvement. See, e.g., Rivera v. Fischer, 655 F. Supp. 2d 235, 238 (W.D.N.Y.2009) (citing cases); Boddie v. Morgenthau, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) ("While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . [p]ersonal

15

involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint."). There is neither record evidence indicating that Jones wrote a letter or grievance to Phillips nor that Phillips investigated or acted on any of Jones's complaints. Furthermore, there is also nothing in the record indicating that any of the defendants created a policy or custom under which unconstitutional practices occurred, were grossly negligent in their supervision of subordinates, or exhibited deliberate indifference to Jones's rights.

Accordingly, defendants' motion on this ground should be granted.

### F. ADA and Rehabilitation Act Claims

In order to state an ADA claim, 42 U.S.C. § 12132 requires an inmate to demonstrate that:

> (1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity.

Id.; see also Pennsylvania Dep't of Corr., 524 U.S. at 209.

As to the first element, a person is an individual with a qualified disability if "(A) a physical or mental impairment . . . substantially limits one or more of the major life activities of such individual, (B) [there is] a record of such an impairment, or (C) [the individual is] being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C).

> To determine if an individual meets any of the above criteria, courts apply a three part test . . . First, a plaintiff must show that [he or] she suffers from a physical or mental impairment. Second, the plaintiff must establish that the activity [he or] she alleges to be impaired constitutes a "major life activity." Third,

> the plaintiff must show that [his or] her impairment "substantially limits" the major life activity previously identified.

Smith v. Masterson, 538 F. Supp. 2d 653, 657 (S.D.N.Y. 2008) (internal citations omitted). Major life activities are defined as "walking, standing, sitting . . . ." 29 C.F.R. § 1630.2(i)(1).

In this case, Jones is barred from bringing an ADA claim. First, under the ADA, Jones is barred from suing the individual defendants in their individual and official capacities for monetary damages. Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). Second, Jones may seek monetary relief against the state if the alleged violation "was motivated by discriminatory animus or ill will based on the plaintiff's disability." Id. at 111. However, Jones does not allege any discriminatory animus on the part of the defendants. Thus, Jones is barred from seeking monetary relief from the state defendant. Third, as discussed above in subsection IV(A), injunctive and declaratory relief claims are mooted by Jones's transfer out of the allegedly offending prison facilities. Because Jones cannot obtain any sort of judicial relief under an ADA claim, Jones cannot proceed with the claim. Therefore, Jones's ADA claim should be dismissed.

To the extent that Jones has asserted Rehabilitation Act claims, they too, should be dismissed. The Rehabilitation Act protects any "qualified individual with a disability . . . [from] be[ing] excluded from the participation in, . . . [or] denied the benefits of," any federally funded program "solely by reason of his or her disability . . . ." 29 U.S.C. § 794(a); see also Clarkson v. Coughlin, 898 F. Supp. 1019, 1037–38 (S.D.N.Y. 1995) ("The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act."). Since Jones is barred from obtaining judicial relief under the ADA and the requirements for stating a claim are the same for the ADA and the

Rehabilitation Act, Jones is also barred from obtaining judicial relief under the Rehabilitation Act claim.

Accordingly, defendants' motion on these grounds should be granted.

### G. RLUIPA Claims

Defendants do not discuss Jones's RLUIPA claim in their motion for summary judgment. However, the Court sua sponte addresses the claim pursuant to 28 U.S.C. § 1915(e), which directs that when a plaintiff seeks to proceed in forma pauperis,[10] "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

The RLUIPA provides that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a); see also Salahuddin v. Goord, 467 F.3d 263, 273–74 (2d Cir. 2006); Pugh v. Goord, 571 F. Supp. 2d 477, 503 (S.D.N.Y. 2008). In a RLUIPA claim,

> [i]f a plaintiff produces prima facie evidence to support a claim alleging a violation of the Free Exercise Clause or a violation of section 2000cc of this title, the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the law (including a regulation) or government practice that is challenged

---

[10] By Decision and Order dated September 23, 2011, Jones was granted in forma pauperis status to proceed in this action. Dkt. No. 4.

18

> by the claim substantially burdens the plaintiff's exercise of religion.

42 U.S.C. § 2000cc-2(b); Pugh, 571 F. Supp. 2d at 504. "The prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs. The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." Salahuddin, 467 F.3d at 274–75.

Here, Jones's RLUIPA claim must fail as a matter of law. First, Jones does not proffer any evidence to support his allegations that he was denied opportunities to attend religious services nor to visit a Muslim chaplain. 42 U.S.C. § 2000cc-2(b); Jeffreys, 426 F.3d at 554. The exhibits attached to his original complaint do not refer to these allegations and Jones has provided no other evidence to the Court. Thus, Jones has failed to establish a prima facie case of RLUIPA. Second, the Eleventh Amendment also serves to protect state defendants in both their official and individual capacities from RLUIPA claims for monetary damages. See Pilgrim v. Artus, No. 07-CV-1001 (GLS/RFT), 2010 WL 3724883, at *15–16 (N.D.N.Y. Mar. 18, 2010) (discussing Eleventh Amendment immunity and RLUIPA decisions in this Circuit);[11] see also Pugh v. Goord, 571 F. Supp. 2d 477, 509 (S.D.N.Y. 2008). As such, defendants are immune from monetary relief. 28 U.S.C. § 1915(e)(2)(B). Third, as discussed above in subsection IV(A), claims of injunctive and declaratory relief are now moot. For these reasons, Jones cannot proceed with his RLUIPA claim.

Accordingly, Jones's RLUIPA claim should be dismissed.

---

[11] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

## V. Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 53) be **GRANTED** as to all claims against all defendants and Jones's amended complaint be **DISMISSED** (Dkt. No. 7) with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 21, 2013
       Albany, New York

*/s/ Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge